# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**ROBERT KENNETH BRINSON,**

    Petitioner,

v.

**TERRY O'BRIEN,** Warden

    Respondent.

Civil No.: 2:15CV62
(JUDGE BAILEY)

## REPORT AND RECOMMENDATION

### I.    Procedural History

On August 17, 2015, the *pro se* Petitioner, Robert Brinson, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and a Motion for Leave to Proceed *in forma pauperis* ("IFP"). ECF Nos. 1, 2. On March 18, 2016, the Petitioner was granted leave to proceed IFP. ECF No. 9. On March 18, 2016, the undersigned ordered the Respondent to show cause as to why the writ should not be granted. ECF No. 10.

On April 12, 2016, the Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgement and Response to Order to Show Cause and Memorandum in Support. ECF Nos. 14, 15. A Notice was issued to the Petitioner on April 29, 2016, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975), instructing him of his right to file a response to Respondent's Motion and Memorandum. ECF No. 16. Petitioner filed a Response in Opposition to Respondent's Motion and Memorandum on April 29, 2016. ECF No. 20.

1

On July 5. 2016, an Order was entered requiring the Respondent to file a Supplemental Response. ECF No. 25. The Supplemental Response was filed on July 19, 2016 [ECF No. 27], and on August 5, 2016, the Petitioner filed a Reply.

## II.  Facts

On March 13, 1992, the Petitioner was sentenced to a 22-year term of confinement in the Lexington County General Sessions Court in Lexington, South Carolina.[1] On October 5, 1992, the Petitioner escaped from state custody.[2] While on escape, the Petitioner committed Armed Robbery in the Western District of North Carolina. On December 19, 1992, the Petitioner was apprehended, and on December 24, 1992, the Petitioner was returned to state custody.

On September 23, 1993, following a jury trial, the Petitioner was sentenced in the United States District Court for the District of South Carolina to a term of 87-months for Bank Robbery (Ct. 1) ordered to be served concurrently to the state sentence imposed on March 13, 1992, and 120-months for Possession of a Firearm During and in Relation to a Crime of Violence (Ct. 2) ordered to be served consecutively to Ct. 1 and the state

---

[1] On August 30, 1991, the Petitioner and his brother, Drew Howard Brinson robbed the Southern National Bank in Columbia, South Carolina. The Petitioner and his brother were armed while committing this robbery. ECF No. 21-1 at 9. This Document is an **incomplete** copy of the Petitioner's PSR from the Eastern District of Kentucky. The Respondent also filed **incomplete** copies of the Petitioner's PSR from both the District of South Carolina [ECF No. 21-1, 2-3] and the Western District of North Carolina. ECF No. 21-1 at 5-6. Although the pro se law clerk assigned to this case requested complete copies, as of the date of this Report and Recommendation, they have not been filed.

[2] On October 5, 1992, the Petitioner and his brother, Drew Howard Brinson, were being transported from Central Correctional Institution in Columbia, South Carolina for trial in the United States District Court for South Carolina in Case #:5:92-cr-00387-JMC-1 referenced in the body of the Report and Recommendation. During the trip, the Petitioner reportedly held a pistol to the head of the correctional officer sitting in the passenger seat of the van. The Petitioner and his brother obtained the correctional officers' firearms and used their leg irons and belly chains to chain the correctional officers to a tree on the side of a secondary road. The two brothers then escaped in the corrections van. ECF No. 21-1 at 9.

sentence for a total term of 207-months.³ See Criminal Docket for Case #: 5:92-cr-00387-JMC-1 available on PACER.

On October 18, 1993, the Petitioner was sentenced to 30-years in the state for Escape, Kidnapping and Robbery. On November 19, 1993, the Petitioner was taken from state custody on a Federal Writ. On May 25, 1994, while on federal writ, the Petitioner escaped from custody. On June 2, 1994, the Petitioner was arrested by state authorities.

On June 14, 1994, the Petitioner was returned to the custody of the United States Marshal. On February 1, 1995, following a guilty plea to Possession of a Firearm, Having Previously Been Convicted of a Felony, Petitioner was sentenced in the United States District Court for the Eastern District of Kentucky to a 210-month term of confinement. This sentence was ordered to be served consecutively to pending and undischarged sentences. ECF No. 15-1 at 31-32.

Finally, on March 20, 1995, following a guilty plea to Armed Bank Robbery, the Petitioner was sentenced in the United States District Court for the Western District of North Carolina to a term of 240 months.⁴ The sentence was ordered to be served

---

³ The Petitioner's brother, Drew Howard Brinson was his co-defendant. He received a sentence of 125 months for the robbery, (Ct. 1) to run concurrent with the state sentence imposed on March 13, 1992, and a 60 month sentence on the firearm charge (Ct. 2) to be served consecutive to the state sentence and Count 1 of the federal sentence **for a total sentence of 185 months.**

⁴ The Petitioner's brother, Drew Brinson, was his co-defendant in this case. He received a sentence of twenty years. Although the written judgment did not include any indication that the sentence was to be served concurrently to any other sentences, his plea agreement provided: "the defendant's sentence shall be consecutive to any previously-imposed federal sentence(s) but concurrent with any previously-imposed state sentence(s)." See Brinson v. Ives, No. 12-5329, Doc. No. 33 at 2 (6th Cir. Dec. 7, 2012). However, on appeal from a denial on his habeas petition pursuant to 28 U.S.C. § 2241, the Sixth Circuit Court of Appeals found that the "record contains persuasive evidence that the sentencing court ordered the twenty-year sentence to be served concurrently with Brinson's previously-imposed state sentences…" Id. at 3-4. Therefore, the two brothers received the same sentence.

consecutively to all federal sentences he was then serving but concurrent with any state sentence he was serving. ECF No. 15-1 at 36-37.

On March 30, 1995, the Petitioner was returned to state authorities with the federal sentences lodged as a detainer. On February 1, 2011, the Petitioner completed his state sentences and was released to the United States Marshal. ECF No. 15-1 at 10. The Petitioner's projected release date from federal custody is July 24, 2052 via good conduct time. ECF No. 15-1 at 51.

## II. The Pleadings

### A. The Petition

The Petitioner alleges that the Bureau of Prisons ("BOP") has unlawfully computed his sentence by running only the 87 month sentence from the District of South Carolina concurrently to his state sentence. The Petitioner argues that his 240-month sentence from the Western District of North Carolina was also ordered to run concurrently with his state sentence. In support of his argument, the Petitioner cites to the decision by the Sixth Circuit Court of Appeals in his brother's appeal of his §2241 petition.

### B. Respondent's Motion and Memorandum

In response to Petitioner's claims, Respondent argues that it is the BOP, and not the courts, that determines when a defendant's sentence starts and whether the defendant should receive credit for any time spent in custody. In addition, the Respondent argues that a sentence cannot commence prior to the date it is pronounced even if it is to be concurrent to a sentence already being served. Finally, the Respondent argues that in compliance with BOP Program Statement 5880.28,

4

Sentence Computation Manual (CCCA of 1984, pages 1-33), the BOP aggregated all of the Petitioner's federal sentences into one computation, to create one release date. Accordingly, the Respondent contends that the Petitioner was sentenced to a total federal aggregate term of confinement of 657-months, and October 9, 2004, is the earliest date the Bureau could commence his 87-month concurrent term of incarceration.[5]

**C. Petitioner's Response**

In his response, the Petitioner appears to argue that the federal judge in the District of South Carolina and the Assistant U.S. Attorney created a loophole for sentencing. To the extent that the Petitioner is challenging that his sentence was maximized by their deliberate actions, this is not an appropriate claim for a §2241 petition.

**D. Respondent's Supplemental Memorandum**

As previously noted, this Court ordered the Respondent to provide further information regarding the Petitioner's 240-month sentence imposed on March 20, 1995, by the Western District of North Carolina and an explanation as to why that sentence was not run concurrently with his state sentence. In response, the Respondent contends that Petitioner's 240-month sentence could not run concurrently with his state of South Carolina sentence, because the aggregate term of his consecutive federal sentences extended beyond the satisfaction date of his state sentence. Moreover, the Respondent maintains that the only way the 240-month term could run concurrent to

---

[5] By way of explanation, the Respondent argues that the Petitioner's 120-month term of imprisonment, could not commence until he completed his State of Carolina sentence as well as the 87-month federal term.

5

the state sentence would be if the Western District of North Carolina ordered the sentence to run concurrently to both Petitioner's state sentence and federal sentence.

**E. Petitioner's Supplemental Response**

The Petitioner argues that multiple federal sentences are aggregated for simplicity purposes to prevent sentence calculations such as the BOP has applied to his case. The Petitioner notes that his state sentence was 360 months, while his federal sentence was 657 months with 327 months of that concurrent to the state sentence. The Petitioner argues this creates what is known as a Willis situation. See Willis v. United States, 438 F.2d 923, 925 (5th Cir. 1971).[6] In summary, the Petitioner argues that he has only been awarded federal credit for 75 months of the almost 20 years spent in state prison, and to deny him federal credit for the remaining 155 months[7] would deny him his constitutional due process rights, defy logic and amount to a grave injustice.

### III.     Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th

---

[6] Pursuant to BOP Program Statement ("PS") 580.28 Sentence Computation Manual, a federal prisoner is entitled to Willis credits when: (1) his federal and state sentences are concurrent; and (2) his federal sentence is to run longer than the state sentence (not counting any credits). When the prisoner meets both criteria, he is entitled to credits on his federal sentence, calculated as follows:

> Prior custody credits shall be given for any time spent is non-federal presentence custody that begins on or after the date that his first sentence begins to run, federal or non-federal. These time credits are known as Willis time credits.

P.S. 5880.28(2)(c).
[7] The Petitioner indicates that he spent 230 months in State custody, and arrives at the 155 month figure by subtracting 75 months.

6

Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal,

where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a

8

whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## IV. Analysis

This Court finds that the following facts are not in dispute:

1. The Petitioner was sentenced to a 22-years term of confinement in a South Carolina State Court on March 13, 1992.

2. The Petitioner escaped from state custody on October 5, 1992, was apprehended on December 19, 1992, and was returned to state custody on December 24, 1992.

3. On September 23, 1993, the Petitioner was sentenced in the District of South Carolina to a term of 87-months to be served concurrently to his state sentence and 120-months to be served consecutively to both the 87-month sentence and the state sentence.

4. On October 18, 1993, the Petitioner was sentenced in State court to 30 years for the October 5, 1992 escape as well as kidnapping and robbery.

5. On May 25, 1994, while on federal writ, the Petitioner escaped from custody, and was subsequently arrested by state authorities on June 2, 1994.

6. On February 1, 1995, the Petitioner was sentenced in the Eastern District of Kentucky to a term of 210-months to be served consecutively to pending and undischarged sentences.

7. On March 20, 1995, the Petitioner was sentenced in the Western District of North Carolina to a term of 240-months to be served consecutively to all federal sentences but concurrently with any state sentence.

9

8. The Petitioner completed his state sentence on February 1, 2011, after spending approximately 226 months in state custody, after subtracting the slightly less than 4 months that he was on escape status.

9. The BOP Designation and Sentence Calculation Center calculated the Petitioner's federal sentence by commencing his first concurrent sentence, 87 months, to his state sentence on October 9, 2004[8], the earliest date the Center maintains that sentence could begin.

Therefore, the sole issue before this Court is whether the BOP's failure to credit Petitioner's additional time in state custody against his March 20, 1995 sentence is appropriate. For the reasons discussed below, this Court concludes that the Respondent has failed to demonstrate that it is.

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Nevertheless, in some cases, a federal sentence may begin prior to the date the Attorney General gains physical custody of the defendant. Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment." Therefore, when a federal court orders its sentence to run concurrently with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th

---

[8] October 9, 2004, is approximately 75 months prior to Petitioner's February 1, 2011, release date from State confinement, and appears to reflect good time credit on a sentence of 87 months, which is 12 months and 19 days. See http://federal-prison.org/sentence-calculator/.

Cir. 1998) (a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.")

Here, it is clear that the BOP made a *nunc pro tunc* designation with respect to the Petitioner's first federal sentence of 87 months, which was imposed concurrently to his existing state sentence of 22 years. However, as has been noted throughout this Report and Recommendation, the BOP maintains that it cannot run the Petitioner's March 30, 1995 federal sentence of 240 months concurrently with his state sentence despite the judgment providing that it be concurrent. It would appear that the Respondent maintains that position because Petitioner's aggregate federal sentence exceeds his state sentence and because the federal sentences were ordered to run consecutively to each other. However, aside from the BOP's own regulations, the Respondent cites no case law which supports that position.

This Court has reviewed the decision issued by the Sixth Circuit on December 7, 2012, in Drew Brinson's appeal of the denial of his § 2241 petition challenging the BOP's computation of his sentence. Again, as previously noted, the Petitioner and Drew Brinson are brothers and were co-defendants in the South Carolina state cases and the cases filed in the District of South Carolina and the Western District of North Carolina. Drew Brinson, like the Petitioner, received a sentence in the District of South Carolina which was partially concurrent and partially consecutive to his state sentence. Additionally, Drew Brinson, like the Petitioner, received a 240-month sentence in the Western District of North Carolina that was concurrent to his state sentences but consecutive to his previously imposed federal sentence(s). It would appear that the

11

BOP aggregated Drew Brinson's federal sentence into one sentence and ran only the District of South Carolina sentence concurrently with his state sentence. At the time Drew Brinson filed his §2241petition on February 3, 2011, his projected release date was not until 2031.

Following the denial of his §2241 petition by the Eastern District of Kentucky, Drew Brinson appealed to the Sixth Circuit. On December 7, 2012, the Sixth Circuit entered an Order in which it vacated the portion of the district judge's judgment related to his North Carolina federal sentence and remanded the case with directions to grant the petition in part and order the BOP to properly compute his remaining term of sentence. Specifically, the Court held:

> Contrary to the Bureau of Prisons' belief, it is possible for Brinson's North Carolina federal sentence to be served both concurrently with his previously-imposed state sentences and consecutively to his previously-imposed federal sentences. This is because there is some period of time when Brinson's first federal sentence of only 125 months—which is little more than ten years—had been completed but he was still imprisoned in state prison for his twenty-two year and thirty year state sentences, which were 'previously-imposed state sentence(s)' at the time that Brinson was sentenced by the North Carolina federal court. This period of time, whatever it may prove to be, should be considered by the Bureau of Prisons when it recalculates Brinson's estimated release dates.

Brinson v. Ives, No. 12-5329 at 4-5 (6th Cir. Dec. 7, 2012).[9]

Following the reasoning of the Sixth Circuit, this Court believes that the BOP has miscalculated the Petitioner's sentence.[10] More specifically, this Court is of the opinion

---

[9] Upon remand, it is clear that the BOP did as instructed, and he was released from the custody of the BOP on October 25, 2013, some 18 years earlier than his original projected release date in 2031.

[10] This Court recognizes that the Petitioner received a sentence in the Eastern District of Kentucky that was made consecutive to all pending and undischarged sentences and is an additional sentence not faced by his brother. However, it does not appear to this Court that the additional sentence requires a calculation opposite to that outlined by the Sixth Circuit in Drew Brinson's case.

12

that the BOP should have started Petitioner's 87-month District of South Carolina sentence on September 23, 1993, when it ordered it served concurrently to his previously imposed South Carolina state sentence, and then started running his 240-month concurrent sentence at the expiration of the 87-month sentence for the time in which he remained in state custody. Based on a total concurrent sentence of 327 months, it would appear that the Petitioner's expected Good Conduct Time would be approximately 48 months, and the expected duration of confinement would be just short of 279 months. The Petitioner was incarcerated by the State of South Carolina for approximately 226 months, and therefore, the entirety of the federal sentences ordered to run concurrently to his state sentence(s) will not be satisfied even with a recalculation as herein suggested.[11]

Finally, it is very clear that the Petitioner also has a 120-month sentence from the District of South Carolina that was ordered to be served consecutively to both his 87-month sentence imposed by that court and the State sentence as well as a 210-month sentence from the Western District of Kentucky, which ordered served consecutively to all pending sentences. This amounts to a 330-month sentence that could not begin prior to the expiration of his State sentence. With Good Conduct Time, the expected duration of this total sentence is 281months, or nearly 23.5 years. Adding the approximately 53 months that would remain of his federal sentences ordered to run concurrently to his state sentences results in a total sentence of 334 months, or nearly

---

[11] This Court estimates that approximately 53 months would remain of the 327 months.

13

8 years. When the Petitioner entered Federal custody, he was approximately 56 years old, which means he will be about 84 years old when he completes his sentence.[12]

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss or for Summary Judgment" **[ECF No. 14]** be **DENIED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **GRANTED**. The undersigned further **RECOMMENDS** that the BOP be directed to recalculate Petitioner's sentence to award him credit for the time he spent in State custody after September 23, 1993 against the 87-month sentence imposed by the District of South Carolina **and** the 240-month sentence imposed by the Western District of North Carolina.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

---

[12] He would be approximately 98 years old if his current projected release date of July 24, 2052 remains unchanged,

14

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: January 26, 2017

*/s Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE